# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>**JOSE ALBERTO GASTELUM, and RAMIRO HERNANDEZ-GARCIA**<br><br>　　　　　Defendant. | **ORDER**<br><br>Case No. 2:05CR825DAK |

　　　　On July 31, 2007, this court held an evidentiary hearing as to Defendant's competency to stand trial.  At the hearing, the United States was represented by John Huber, Defendant was present and represented by Sharon Preston.   Both parties have now filed memorandum supporting their positions.

　　　　Defense counsel submits that she has been unable to have a rational conversation with Defendant regarding his defense.  Defendant stubbornly persists in entirely illogical beliefs with respect to important concepts involved in his case.  For example, although he expresses some understanding of joint and constructive possession, he insists that two people cannot be found guilty of the same crime.  He has also been unable to understand the concept of circumstantial evidence and the concept and effect of a minimum mandatory sentence.

Because of these difficulties, the court ordered psychological testing. After Defendant's initial assessment by Dr. Juan A. Mejia, Ph.D., the government requested the opportunity to have Defendant evaluated by the Bureau of Prisons ("BOP"). The BOP issued a forensic evaluation of Defendant on June 4, 2007. After the BOP's evaluation of Defendant, Dr. Mejia evaluated Defendant further. The court then held its July 31, 2007 evidentiary hearing on competency. At the hearing, Dr. Mejia testified as did Lisa Hope, the psychologist with the BOP who prepared the forensic evaluation.

The issue before the court is whether Defendant has demonstrated by a preponderance of the evidence that he is incompetent to stand trial. 18 U.S.C. § 4241. The test of a defendant's competency is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

In Defendant's initial assessment by Dr. Mejia, Dr. Mejia concluded that Defendant's MMPI-2 clinical profile indicated a psychotic diagnosis, most likely paranoid schizophrenia. Dr. Mejia testified that Defendant produced a highly elevated score on the "F scale." Dr. Mejia explained that this kind of score is typically produced by someone who is answering randomly, or cannot read. But the score can also be produced by someone with severe psychopathology, such as psychotic disorder. Dr. Mejia ruled out the possibility that Defendant was answering carelessly or randomly due to the fact that Defendant produced TRIN and VIN scores that indicated that he was not responding randomly. Dr. Mejia also testified that he did not see any evidence of malingering. To the contrary, Defendant was trying to portray himself in a good

light.

Dr. Mejia is the only evaluator to observe Defendant's interactions with his attorney. The court finds this very significant in its evaluation and determination of the competency issue. Dr. Mejia testified that Defendants interactions with Defense Counsel evidenced psychotic-like paranoia and were irrational. In addition, Dr. Mejia noted that Defendant evidenced extreme concrete perceptions and was unyielding to complexities. He observed that Defendant responded with extreme suspicion and hostility toward Defense Counsel when his attorney attempted to explain concepts such as possession or proof. In addition, although Defense Counsel repeatedly explained the concept of minimum sentences to Defendant in a simple and straightforward fashion, she had no success. Defendant believed that a letter he received from his co-defendant stating that the drugs were not his could be used to exonerate him or reduce his sentence below the minimum mandatory sentence. He would not, however, hand the letter to his counsel because he was concerned that she would tear it up and he would be left without any proof of his evidence. Dr. Meija concluded that Defendant's psychotic disorder is manifested in paranoia of such severity that it interferes with his ability to relate to his attorney in a rational and factual manner.

It is clear from the assessments that Defendant has severe cognitive impairments. He tested very poorly in several areas, such as nonverbal intelligence quotient, pictorial nonverbal intelligence quotient, geometric nonverbal intelligence quotient. The Bureau of Prison's assessment recognized that Defendant is, at best, in the borderline range of intellectual functioning. The assessment attributed Defendant's cognitive limitations to several possible causes, including multiple head injuries

Dr. Mejia found, and the court agrees, that the BOP's assessment is deficient because it did not include neurological testing.  Dr. Mejia testified that in light of the reported history of head injuries and the impairments that initial testing had indicated, Defendant should have been tested to determine if there is any brain damage or if there is any connection between brain impairment and behavior.  After reviewing the BOP's assessment, Dr. Mejia tested Defendant for such brain damage.  Based on the results of his testing, Dr. Mejia concluded that Defendant has diffuse brain impairment.  This means that Defendant has some damage to various parts of his brain, which would be consistent with the history of being hit in the head with various objects at different times during his life.  Defendant's clinical and summary scales in nearly every area were elevated beyond the critical level.  On the motor skills component, Defendant's performance was among the worst ever seen by Dr. Mejia.  These impaired motor skills indicate brain damage.

Dr. Mejia testified that the neurological testing further bolstered his initial diagnosis that Defendant had some sort of brain impairment being the cause of the psychopathology.  Dr. Mejia opined that Defendant has an organic mental disorder resulting in severe cognitive impairment and paranoia.  This disorder prevents Defendant from consulting with his attorney with a reasonable degree of rational understanding.

The BOP assessment also appears deficient because it completely discounts the MMPI-2 results on the basis that Defendant's scores indicated that he responded to the test in an inconsistent, random manner.  However, the BOP assessment also recognizes that Defendant seemed to give his best effort on all tasks during testing.  Nonetheless, the BOP did not provide any hypothesis that would reconcile these conflicting findings.  The court finds Dr. Mejia's testimony and conclusions more reliable because of the BOP's failure to reconcile the results of

4

the MMPI-2 and its failure to conduct any neurological testing in an attempt to reconcile these contradictory findings.

The court concludes that Defendant's significant intellectual impairment combined with his psychopathology arising from organic brain damage have made it impossible for him to adequately consult with his counsel with a reasonable degree of rational understanding. Neurological testing, which was not conducted by the BOP, confirmed that Defendant has diffuse brain damage. The record demonstrates that Defendant lacks the ability to understand abstract concepts necessary to his defense. This inability is exacerbated by his paranoia.

Defendant's paranoia with respect to his Defense Counsel is irrational and based on trivial incidents. The court finds Dr. Mejia's conclusions regarding Defendant's ability to consult with his attorney to be more significant and credible because he witnessed Defendant's interactions with Defense Counsel. He also appears to have questioned Defendant with respect to his understanding of legal concepts. Dr. Hope's testimony as to Defendant's ability to understand legal concepts demonstrated that the BOP evaluators did not question Defendant's rigid beliefs. Dr. Hope testified that the evaluators accepted Defendant's positions with respect to his defense as rational. There is no indication from her testimony that the BOP evaluators questioned the inconsistencies and irrationalities present in Defendant's understanding of his defense. Therefore, the BOP evaluators did not properly analyze the situation and their conclusions are unhelpful to the court. The question as to Defendant's competency is not whether he can construct an irrational defense strategy for himself. The question is whether he can consult with his attorney with a reasonable degree of rational understanding.

Because the court concludes that Defendant does not have the present ability to consult

with his lawyer with a reasonable degree of rational understanding, the court finds Defendant incompetent to stand trial.  Defendant shall be committed to the custody of the Attorney General.

DATED this 25th day of October, 2007.

_____
DALE A. KIMBALL
United States District Judge